UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ANTHONY LUPO,

                        Plaintiff,

                -against-

ZWANGER & PESIRI RADIOLOGY GROUP, LLP
and ZWANGER RADIOLOGY, P.C.

                        Defendants.
-----------------------------------------------------------------X

COMPLAINT

**CV 15 2426**

15 Civ-_____

**SPATT, J.**

**BROWN, M. J.**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 29 2015 ★
LONG ISLAND OFFICE

**STATEMENT OF PLAINTIFF'S CLAIMS**

1. Plaintiff files this action complaining of Defendants for violations of the Americans with Disabilities Act, 42 U.S.C. Section 12182 et seq. and 42 U.S.C. Section 12204 et seq. (hereinafter, "ADA"); the Rehabilitation Act of 1973, as Amended, 29 U.S.C. § 794, and the New York State Executive Law § 296 (hereinafter, "Human Rights Law"). Plaintiff seeks declaratory and injunctive relief, compensatory damages, and attorney's fees and costs against the Defendants.

**PARTIES**

2. Plaintiff ANTHONY LUPO (hereinafter, "LUPO") is a resident of Centereach in Suffolk County, New York. He is an individual with a disability called cerebral palsy. As a result of his disability, the Plaintiff cannot walk and uses a motorized wheelchair to assist in his mobility.

1

3. Defendant ZWANGER & PESIRI RADIOLOGY GROUP, LLP is an active domestic registered limited liability partnership duly organized and existing under and by virtue of the laws of the State of New York.

4. Upon information and belief, Defendant ZWANGER & PESIRI RADIOLOGY GROUP, LLP provides radiology services at approximately 17 offices in Nassau and Suffolk Counties.

5. Defendant ZWANGER RADIOLOGY, P.C. is an active domestic professional corporation duly organized and existing under and by virtue of the laws of the State of New York.

6. Upon information and belief, Defendants ZWANGER & PESIRI RADIOLOGY GROUP, LLP and ZWANGER RADIOLOGY, P.C. (collectively, hereinafter "ZWANGER") provide radiology services to the general public at Defendants' Stony Brook office located at 2500 Nesconset Highway, Building 15, Stony Brook, NY 11790 (hereinafter, "Premises").

## VENUE AND JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 2201 and through the ADA.

8. This Court has venue through the residence of the Plaintiff and the business activities of the Defendants in Suffolk County, New York.

## ALLEGATIONS COMMON TO ALL CLAIMS

9. Defendants own and operate the Zwanger-Pesiri Radiology facility located at the Premises.

10. The Premises was constructed and first occupied after January 26, 1993.

11. Defendants opened their offices at the Premises on or about January 2012.

12. Upon information and belief, the Premises was altered for Defendants' use as a radiological diagnostic medical services facility after January 26, 1993.

13. Defendants' Premises is a medical facility as that term is defined in 28 CFR Part 36, Appendix A § 6.1.

14. The Premises complained of herein is a place of public accommodation within the definition of that term provided in 28 C.F.R. Section 36.104.

15. In preparation for opening their offices at the Premises Defendants purchased new radiology diagnostic equipment, including new sonogram tables.

16. The radiology diagnostic equipment purchased by Defendants for use in the Premises are intended for continuous, permanent use in the Premises until the equipment is no longer functional or current.

17. Defendants provide a wide array of radiology services including MRI, CT, PET, Mammography and ultrasound services.

18. Many of Defendants' radiology services are provided while patients lie on tables designed for use with particular radiology machines.

19. In the event that some of the radiology equipment and related tables used in the Premises were not newly purchased when the Defendants first occupied the Premises for business, all such equipment and tables were purchased new after January 26, 1993.

20. Examination tables and radiological equipment are equipment and personal property purchased for use by the public and fall within the definition of "facility" as that term is defined in 28 C.F.R. Section 36.104 : "*Facility* means all

3

or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."

21. On March 12, 2015, the Plaintiff went to the Premises for a sonogram.

22. Plaintiff had called Defendants asking for an appointment at their East Setauket office which is the closest facility owned by Defendants to Plaintiff's residence. There were no convenient appointments available to the Plaintiff at the East Setauket office, but Defendants scheduled an appointment for Plaintiff at the Premises.

23. In 2007 Plaintiff had a problem with his ability to access a Zwanger-Pesiri examination table required for the administration of a radiology examination. As a result of a complaint made by the Plaintiff about his difficulties obtaining access to the Zwanger-Pesiri examination table, Zwanger-Pesiri adopted a policy of non-discrimination against individuals with disabilities which included removal of barriers in gaining access to radiological services and assistance from staff transferring onto and off of radiological tables.

24. Upon information and belief, all manufacturers of tables used in conjunction with radiological equipment provide models that are adjustable in height which are designed to accommodate individuals who use wheelchairs or who are small in stature.

25. Adjustable tables have been available commercially for many years.

26. Prior to the advent of height adjustable examination tables physicians and medical providers used hoyer lifts and/or employees trained in lifting patients to provide assistance to individuals with disabilities who lack the physical ability to use examination tables without assistance.

27. On March 12, 2015, when Plaintiff arrived at the Premises and was ushered into the room where the sonogram machine and table were located, he asked an employee of the Defendants if the table could be adjusted in height to the approximate level of his wheelchair seat so he could easily transfer onto and off of the table.

28. Plaintiff was told that the sonogram table, which appeared to be approximately 36 inches high, could not be lowered.

29. LUPO asked an employee of ZWANGER if they had another table that could be lowered to the desired height.

30. The employee responded, "No."

31. Plaintiff then asked whether the Defendants would provide assistance getting onto and off of the table from his wheelchair.

32. Defendant's employee did not provide a response to this request.

33. Plaintiff cannot support any weight on his upper or lower extremities because of his disability.

34. Consequently, Plaintiff could not get onto or off of the table without assistance.

35. A person or persons would have to lift the Plaintiff's entire body out of his wheelchair, pivot his body over to the table, then lift his lower body up onto the

table where he would then lie down. When the test was done the reverse procedure would have to be done to place Plaintiff back in his chair.

36. If the table were adjustable in height the assistance would be minimal. Plaintiff would merely have to slide his body off of his chair onto the table, then lay down with only minimal assistance once on the table, and then perform the reverse procedure when the test is completed.

37. Plaintiff had a personal care aide named Nathanial Ott accompany him to the Premises on March 12, 2015. Mr. Ott's services are paid by Medicaid under a New York State personal care aide program. Mr. Lupo's personal care aides are not required as a condition of their employment to completely lift him up bearing his entire weight due to safety concerns related to potential injuries from such lifting.

38. Injuries to the aides from such lifting activities include spine injuries. Plaintiff can sustain severe or even fatal injuries if he falls while a person with insufficient strength or physical ability attempts to lift him up bearing his entire body weight.

39. When it became apparent that none of the Defendants' employees would provide any assistance lifting the Plaintiff onto and off of the sonogram table, Mr. Ott told the Plaintiff that he would lift him by himself. Mr. Ott then successfully lifted Plaintiff onto the sonogram table.

40. The sonogram was completed and the Plaintiff returned to his wheelchair with Mr. Ott's assistance.

41. Plaintiff's other personal care aides do not possess the physical strength of Nathaniel Ott and could not have provided the Plaintiff with assistance getting onto and off of Defendants' sonogram table had they been present with Plaintiff on March 12, 1015.

42. Plaintiff suffered humiliation and anger at once again being treated like a second class citizen by Defendants' employees.

43. Unlike other patients who use Defendants' radiological services and do not have disabilities, Plaintiff had to subject himself and Mr. Ott to a risk of serious injury just to obtain a needed diagnostic test. Plaintiff's only other choice would have been to return home without having the needed test performed.

## AS AND FOR A FIRST CAUSE OF ACTION UNDER TITLE III OF THE ADA

44. Plaintiff repeats and re-alleges paragraphs one (1) through forty-three (43) and incorporates same herein as if fully set forth.

45. The failure to provide height adjustable examination tables for use with radiological examinations is an example of a violation by Defendants of the barrier removal obligation placed upon the Defendants by Title III of the ADA in order to permit equal access by the Plaintiff and other individuals with disabilities to the radiological facilities provided by the Defendants to the general public. 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a) and 28 C.F.R. § 36.304(b)(4).

46. Defendants also had an obligation to install new facilities, including newly purchased medical equipment necessary for the performance of medical services, for all facilities newly constructed after January 26, 1993 and new equipment

purchased after January 26, 1993 provided that the new construction or equipment purchases are not structurally impracticable. 42 U.S.C. § 12183(a)(1); 28 C.F.R. § 36.401.

47. In January of 2012 when the Defendants opened the Premises the purchase of height adjustable sonogram examination tables was not structurally impracticable.

48. Defendants also had an affirmative obligation to provide the Plaintiff and other similarly situated individuals with disabilities with auxiliary aids and services adjunct to the use of radiological diagnostic equipment. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(a) and 28 C.F.R. § 36.303(b)(3),(4).

49. A height adjustable examination table is an example of an aid auxiliary to the use of the table that was readily available to the Defendants.

50. Defendants also had an obligation under 42 U.S.C. § 12182(b)(2)(A)(v); 28 C.F.R. § 36.305 to provide alternatives to the removal of barriers to access to its facilities not capable of redress by any of the foregoing sections of Title III of the ADA. An example of an alternative to barrier removal would be the use of a hoyer lift or assistance by employees of the Defendant.

51. Defendants' failures to comply with Title III of the ADA as set forth above constitute discrimination against the Plaintiff in violation of 42 U.S.C. § 12182(a); 42 U.S.C. § 12182(b)(1)(A)(iii); 42 U.S.C. § 12182(b)(1)(A)(iv); 42 U.S.C. § 12182(b)(1)(A)(v) and 42 U.S.C. § 12183(a).

52. Title III of the ADA has been in effect since 1992. Defendants actually knew they were obligated to comply with Title III by ensuring the provision of

accessible radiology services to the Plaintiff and other individuals with disabilities at least since 2008 when the Plaintiff previously complained about their failure to provide him with accessible radiology services. Defendants' violations of the ADA are therefore knowing and intentional.

53. The Plaintiff is highly likely to require radiology services again in the future. The Plaintiff will seek such services in the first instance from the Defendants because of the proximity of the premises to Plaintiff's home and because of the vast array of high quality radiology equipment and services provided at their radiology facilities.

54. Plaintiff is entitled to declaratory and injunctive relief, and attorney's fees and costs for Defendants' violations of Title III of the ADA. Such relief is appropriate and necessary to ensure that Defendants will not continue to violate Plaintiff's rights under Title III of the ADA in the future.

### FOR A SECOND CAUSE OF ACTION UNDER THE REHABILITATION ACT OF 1973, AS AMENDED

55. Plaintiff repeats and re-alleges paragraphs one (1) through fifty-four (54) and incorporates same herein as if fully set forth.

56. Upon information and belief, Defendants billed Medicaid for Plaintiff's sonogram.

57. Medicaid is a federal health welfare program administered with federal and state funds which provides health care and medical treatment for individuals who are indigent and/or suffer from severe, chronic disabilities.

58. Defendants receive Medicaid funds for radiological services and are therefore "recipients" of "federal financial assistance" as those terms are defined in 45 C.F.R. §§ 84.3(f) and (h).

59. The Rehabilitation Act of 1973, As Amended, 29 U.S.C. § 794 (hereinafter, "Rehabilitation Act"), requires recipients of federal financial assistance or payments to refrain from discrimination against the Plaintiff and other individuals with disabilities on the basis of disability.

60. The Rehabilitation Act requires new and existing facilities to be accessible to individuals with disabilities. The Rehabilitation Act also requires alternatives to the removal of physical barriers in facilities and the provision of auxiliary aids and services.

61. The Rehabilitation Act provisions at issue in this case will be interpreted in tandem with correspondent violations of Title III of the ADA.

62. On March 12, 2015, Defendants and their employees were deliberately indifferent to Plaintiff's medical and safety needs and his right to be treated equally with respect to non-disabled individuals.

63. Plaintiff is entitled to compensatory damages, declaratory and injunctive relief, and attorney's fees and costs for Defendants' violations of the Rehabilitation Act. Such relief is appropriate and necessary to redress the discrimination experienced by the Plaintiff and to ensure that Defendants will not continue to violate Plaintiff's rights under the Rehabilitation Act in the future.

## FOR A THIRD CAUSE OF ACTION UNDER THE
## NEW YORK STATE HUMAN RIGHT LAW

64. Plaintiff repeats and re-alleges paragraphs one (1) through sixty-three (63) and incorporates same herein as if fully set forth.

65. The Human Rights Law provides equivalent or greater civil rights protections for persons with disabilities than are provided by Title III of the ADA, including the right to compensatory damages.

66. Defendants discriminated against the Plaintiff in violation of the Human Rights Law by their failure to provide a height adjustable table for use with Plaintiff's sonogram test, or with alternatives to removal of barriers that would have permitted the Plaintiff to have a more equal opportunity to access the Defendants' radiology services.

67. Plaintiff is entitled to compensatory damages, declaratory and injunctive relief, and attorney's fees and costs for Defendants' violations of the New York State Human Rights Law.  Such relief is appropriate and necessary to redress the discrimination experienced by the Plaintiff and to ensure that Defendants will not continue to violate Plaintiff's rights under the Human Rights Law in the future.

## INJUNCTIVE RELIEF

68. Injunctive relief is necessary to order the Defendants to cease their violations of Plaintiff's rights under the ADA, Rehabilitation Act and New York State Human Rights and to provide Plaintiff with specific relief to prevent further violations of Plaintiff's rights.

69. There are reasonable grounds to believe that the Defendants will continue to engage in acts and practices prohibited by the foregoing federal and state laws complained of herein, if injunctive relief is not granted.

## DECLARATORY RELIEF

70. Plaintiff is entitled to a declaratory judgment specifying each of the Plaintiff's rights under the ADA, Rehabilitation Act and New York State Human Rights Law pertaining to violations of those federal and state laws committed by the Defendants and each of the Plaintiff's rights to relief as against the Defendants.

## DAMAGES

71. Plaintiff requests TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) in compensatory damages for Defendant's violations of Plaintiff's rights under the Rehabilitation Act and the New York State Human Rights Law.

## ATTORNEY'S FEES AND COSTS

72. Plaintiff had to retain counsel in order to enforce his rights under the ADA, Rehabilitation Act and New York State Human Rights Law. The undersigned counsel is entitled to recover attorney's fees, costs and expenses if the Plaintiff prevails within the meaning of 42 U.S.C. § 12204 in this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief from the Court:

A. Issue a permanent injunction against Defendants, requiring Defendants and their agents, servants and employees, and all persons or entities in active concert therewith, to make all necessary modifications to Defendants' facilities, equipment, policies and practices necessary to

  eliminate all barriers that deny lawful access by Plaintiff to Defendants' Premises and to the radiology services provided thereat.

B. Enter declaratory judgment in favor of the Plaintiff specifying his rights under the ADA, Rehabilitation Act and New York State Human Rights Law as against Defendants and Defendants' violations of the ADA, Rehabilitation Act and New York State Human Rights Law.

C. Award compensatory damages in the amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) to Plaintiff.

D. Find that Plaintiff is a prevailing party in this lawsuit and award attorney's fees, costs and expenses, and such other and further relief, at law or in equity, to which the Plaintiff may be justly entitled.

Dated: Woodbury, New York
   April 15, 2015

                */s/ Martin J. Coleman*
                Martin J. Coleman, Esq. (MJC 7945)
                Attorney for Plaintiff
                100 Crossways Park West, Suite 412
                Woodbury, New York 11797
                (516) 802-5960